UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STUDENT DOE, <br><br> Plaintiff, <br><br> v. <br><br> KRISTI NOEM, Secretary of the Department of Homeland Security; and <br><br> TODD LYONS, Acting Director of Immigration and Customs Enforcement, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )     **Civil Action No.** |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. Student Doe, by and through undersigned counsel, brings this action against the above-named Defendants and respectfully alleges as follows:

### I. INTRODUCTION

2. On or about April 10, 2025, the United States Department of Homeland Security ("DHS") unilaterally terminated the F-1 student status of Student Doe in the SEVIS (Student and Exchange Visitor Information System) database without notice or sufficient explanation, effectively stripping Student Doe of his ability to remain a student and research scientist in the United States. Student Doe is one of over one thousand F-1 students nationwide whose SEVIS record has been abruptly and unlawfully terminated by DHS in the last few weeks.[1]

---

[1] Catherine E. Shoichet, More than 1,000 international students and graduates in the US have had their visas revoked or statuses terminated, CNN (Apr. 17, 2025), https://www.cnn.com/2025/04/17/us/university-international-student-visas-revoked/index.html

3. Student Doe lawfully entered the United States in 2011 on an F-1 visa issued by the U.S. Department of State. He attended an English language program and then transferred his SEVIS to Arizona State University, where he studied physics and computer science and earned a Bachelor of Science. He was then admitted to Brown University to pursue a Master of Science in Physics, graduating in 2017. After completing his Master's degree, he was awarded a merit-based full scholarship to pursue a Ph.D. in condensed matter physics at Georgetown University, where his research focuses on a molecular-based approach to quantum computing. (Exh. L, Georgetown Admissions and Scholarship Letter). At Georgetown, he continued to excel, winning multiple academic distinctions and awards.

4. Student Doe's doctoral work in quantum computing addresses critical national priorities in scalable quantum systems, an area that is of strategic significance to the U.S. government and vital to maintaining competitiveness in global cybersecurity, encryption, and defense technologies. On April 10, 2025, Georgetown notified Student Doe that DHS had terminated his F-1 record in SEVIS and marked Student Doe as "OTHER – Individual identified in criminal records check, and/or has had their visa revoked. SEVIS record has been terminated" (Exh. A, Georgetown Office of Global Studies email confirming SEVIS termination [hereinafter "SEVIS Termination Email"]).

5. DHS's action, which was taken without notice, explanation, or opportunity for Student Doe to respond, has deprived him of his legal status, ability to conduct research and teach, and access to income. It exposes him to immediate risk of arrest, detention, and removal—all without any legitimate legal or factual basis.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1346, 28 U.S.C. § 1361, and 5 U.S.C. §§ 702 and 706. Declaratory relief is authorized by 28 U.S.C. §§ 2201–2202.

7. Venue is proper under 28 U.S.C. § 1391(e)(1)(C) because Student Doe resides, attends Georgetown University, and rents an apartment in his own name in the District of Columbia. (Exh. G, DC Lease Agreement). No real property is involved. ICE triggered the SEVIS by terminating Student Doe's records at Georgetown University's Office of Global Studies (OGS), and its adverse consequences are being experienced in D.C., where Student Doe is a full-time Ph.D. student and long-term resident.

## III. PARTIES

8. Student Doe is a citizen of Saudi Arabia residing in the United States since 2011, and in Washington, D.C. since 2019. He is enrolled as a doctoral student in Georgetown's Physics department, with a focus on quantum computing. Prior to the SEVIS termination, which included an immediate cessation in employment authorization, he was a widely sought after and awarded student, teacher, and mentor in the Physics department. Student Doe seeks to proceed in this action with a pseudonym due to fear of retaliation by Defendants for asserting his rights through this lawsuit, and of harassment or blacklisting by third parties.

9. Defendant Kristi Noem is Secretary of DHS and is sued in her official capacity.

10. Defendant Todd Lyons is Acting Director of ICE and is sued in his official capacity.

## IV. FACTUAL AND PROCEDURAL BACKGROUND

11. SEVIS is a government database that colleges and universities update to track international students' compliance with their F-1 status. ICE, through the Student and Exchange Visitor Program ("SEVP"), uses SEVIS to monitor students' statuses and can adjust it only under conditions described below, and not employed here.

12. As noted above, Student Doe is a full-time student in lawful F-1 visa status. According to Georgetown's Director of Graduate Studies in the Department of Physics, his "high level of achievement in all aspects of his Ph.D. work is quite uncommon and reflects just how invaluable

and unique his contributions are to the department and the University overall." (Exh. I, Director of Graduate Studies, Physics Dept. Professor Daniel L. Blair Letter [hereinafter "Blair Letter"]). He has accrued multiple awards and other recognition for his groundbreaking findings, including being awarded the meritorious 2023-2024 Tigris Fellowship, given to an outstanding foreign student in the sciences, and by being selected for the 2023 Outstanding Teaching Assistant award, considered the department's "highest distinction" (Exh. H, Physics Dept. Chair and Ph.D. Advisor, Prof. Paola Barbara, Letter of Support [hereinafter "Barbara Letter"]; Exh. I, Blair Letter).

13. Student Doe's doctoral research in quantum computing is consistent with the executive's federal priorities under the National Quantum Initiative Act and the National Security Memorandum on Promoting United States Leadership in Quantum Computing While Mitigating Risks to Vulnerable Cryptographic Systems.[2]

14. Nonetheless, on or about April 10, 2025, Student Doe's SEVIS record was abruptly and unlawfully terminated by ICE without any notice or basis. Indeed, he was not even aware of this action until a few hours later when a Georgetown Designated Student Officer (DSO) informed him that the "daily OGS review of all F-1 and J-1 students' records showed that [his] immigration status was terminated by the Department of Homeland Security at 8:57am" (Exh. A, SEVIS Termination Email). His SEVIS record was marked with boilerplate language, "Other –

---

[2] *National Security Memorandum on Promoting United States Leadership in Quantum Computing While Mitigating Risks to Vulnerable Cryptographic Systems*, White House (May 4, 2022), https://bidenwhitehouse.archives.gov/briefing-room/statements-releases/2022/05/04/national-security-memorandum-on-promoting-united-states-leadership-in-quantum-computing-while-mitigating-risks-to-vulnerable-cryptographic-systems/. ("On May 4, 2022, the President signed National Security Memorandum 10, *National Security Memorandum on Promoting United States Leadership in Quantum Computing While Mitigating Risks to Vulnerable Cryptographic Systems*. It outlines the Administration's policy toward quantum computing, gives strategies to promote the emerging technology, prioritizes mitigating risks to encryption, and ensures protection of intellectual property...")

Individual identified in criminal records check and/or has had their VISA [sic] revoked. SEVIS record has been terminated." *Id*. At 1:37 p.m., Student Doe received an email from the DSO noting that the "change to your immigration status was initiated by DHS not OGS[...]. This means you are no longer in valid F-1 student status. You will need to stop any on or off-campus employment for which you have been previously authorized." *Id*.

15. To the extent DHS cited grounds for termination, they are baseless. It has provided no legal explanation or evidence for the decision and has not referenced or demonstrated any compliance with the controlling regulatory criteria under 8 C.F.R. § 214.1(d).

16. DHS's lawless action has disrupted Student Doe's groundbreaking research, suspended his academic and professional advancement, and caused "a stalled situation for the whole [research] group involved with this project as well as other projects that use the same equipment, for the difficulty of planning future measurements and training for new students joining the group." (Exh. H, Barbara Letter). This stalled situation also undermines the U.S. government's ability to advance these studies and secure leadership on emerging cybersecurity as well as advanced supply chain and manufacturing. (Exh. H, Barbara Letter). As Brookings Institution's Congressional testimony notes, the country that sets the standards for quantum infrastructure will likely shape the future direction of global markets and digital governance.[3]

17. Student Doe's only contact with the police occurred in 2016, when he was charged with three misdemeanors arising out of one incident which were all dismissed by the court on the State of Arizona's motion shortly after. He disclosed this incident to DOS and DHS on two

---

[3] Quantum computing is a core technology of the "Fourth Industrial Revolution," with major implications for U.S. security and global competitiveness. Plaintiff is one of few researchers with the expertise to meaningfully advance this field. As Professor Barbara affirms, his work is of exceptional national importance. *See* Rush Doshi, *The United States, China, and the Contest for the Fourth Industrial Revolution*, Brookings Inst. (July 31, 2020), https://www.brookings.edu/articles/the-united-states-china-and-the-contest-for-the-fourth-industrial-revolution/ .

occasions and submitted certified court records: first, when he filed for Optional Practical Training (OPT) after completing his undergraduate in 2017; and second, in 2020 when he renewed his F-1 visa at the U.S. Consulate in Jeddah, where he had been visiting family. Neither DOS nor DHS indicated a concern or required a waiver to issue Student Doe's OPT or F-1 visa.

## V.  CLAIMS FOR RELIEF

18. The foregoing allegations are realleged and incorporated herein.

### COUNT I

### DHS'S UNILATERAL SEVIS TERMINATION VIOLATED STUDENT DOE'S FIFTH AMENDMENT DUE PROCESS RIGHTS

19. The Fifth Amendment guarantees that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. This protection applies to noncitizens lawfully present in the United States. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

20. In *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the Supreme Court set forth a three-part balancing test to determine what procedural protections are constitutionally required before the government may deprive an individual of a protected interest. Applying this framework here demonstrates that DHS's actions violated Student Doe's right to due process.

21. First, the private interest at stake is exceptionally strong. Student Doe faces the loss of his lawful immigration status, academic and professional standing, income, and opportunity to complete a Ph.D. program in quantum computing—a burgeoning area of strategic national interest. Termination of his SEVIS record also subjects him to the imminent risk of arrest, detention, and removal, potentially ending his scientific career in the United States.

22. Second, the risk of erroneous deprivation is high, and the procedures employed by DHS provide no meaningful safeguard. Student Doe received no notice, no explanation of the basis for the termination, and no opportunity to contest the decision or present evidence. The vague reference to a criminal records check and/or visa revocation lacked any factual support and

contradicted prior DOS and DHS status approvals. The complete absence of an individualized assessment renders the process fundamentally unreliable.

23. Third, the government's interest in efficient immigration enforcement does not outweigh the need for procedural safeguards in this case. There is no allegation of public safety, flight, or national security risk—indeed the U.S. benefits from Student Doe's domestic residence—that would justify bypassing basic due process protections. Providing him with notice and an opportunity to be heard would impose minimal administrative burden on the agency but would significantly reduce the risk of wrongful deprivation.

24. Under the *Mathews* test, DHS's failure to provide even rudimentary procedural protections before terminating Student Doe's F-1 status was unconstitutional.

## COUNT II

### DHS VIOLATED THE APA BY ACTING ARBITRARILY AND BEYOND ITS LEGAL AUTHORITY

25. The Administrative Procedure Act (APA) requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

26. DHS's termination of Student Doe's F-1 student status under the SEVIS system falls squarely within this standard. The decision was made without lawful authority, departed from clear regulatory requirements, lacked any individualized rationale, and failed to consider Student Doe's reliance interests and the significant consequences of the action.

**A. DHS exceeded its regulatory authority under 8 C.F.R. § 214.1(d)**

27. Agency-initiated termination of F-1 student status in SEVIS is governed by 8 C.F.R. § 214.1(d), which limits such termination to three specific circumstances:

(1) revocation of a waiver under INA § 212(d)(3) or (4);

(2) introduction of a private bill in Congress; or

7

      (3) publication of a notice in the Federal Register identifying public safety, national security, or diplomatic concerns as the basis for termination.

28. None of these criteria apply to Student Doe. DHS and DOS never requested, required, granted, or revoked a waiver in his case, because neither thought a waiver necessary to the issuance of an approval. No private bill had been introduced and there was no notice in the Federal Register citing Student Doe or his circumstances.

29. Accordingly, the termination was *ultra vires* and not "in accordance with law." *See Jie Fang v. Director, U.S. Immigration & Customs Enforcement,* 935 F.3d 172, 185 n.100 (3d Cir. 2019) (confirming that DHS authority to terminate F-1 SEVIS records is strictly constrained by § 214.1(d)).

### B. DHS failed to provide a reasoned explanation based on the record

30. Under longstanding Supreme Court precedent, agency action must be the product of reasoned decision-making. The agency must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made. . . ." *Motor Vehicle Manufacturers Association v. State Farm*, 463 U.S. 29, 43 (1983). Here, DHS marked his SEVIS record with boilerplate language—seeming to claim Student Doe was identified in a "criminal records check" and/or that his visa had been revoked—without identifying any underlying facts, specific statute, or violation. Even OGS was not put on notice and only learned of the termination through a "daily review of all F-1 . . . records showed that your immigration status was terminated." (Exh. A, SEVIS Termination Email). The record includes no evidence that DHS undertook any individualized review or analysis.

31. Student Doe's only law enforcement contact consists of a 2016 misdemeanor arrest that was dismissed by the court on the motion of the prosecution. This arrest was disclosed to DHS in 2017 and DOS in 2020 and did not affect the approval of Student Doe's OPT or F-1 visa renewal

(Exh. C, F-1 Visa Approval; Exh. F, Employment Authorization Card). An agency's failure to engage in individualized reasoning or assess relevant evidence renders its action arbitrary and capricious. *Id*.

### C. DHS failed to consider significant reliance interests

32. Agency actions that disrupt settled expectations must account for reliance interests—especially when those expectations involve legal status, long-term planning, and coordination with other government institutions. *See Department of Homeland Security v. Regents of the University of California*, 140 S. Ct. 1891, 1913–14 (2020) (finding DHS recission of Deferred Action for Childhood Arrivals program arbitrary and capricious in part because of agency's failure to account for reliance interests of DACA recipients). DHS provided no evidence that it considered the reliance interests held by Student Doe—who has lived in the U.S. since 2011 and has made significant educational, professional, and personal investments based on his SEVIS status (Exh. D, Student Doe Declaration). Georgetown University also relied on Student Doe's legal presence to support his doctoral studies. (Exh. H, Barbara Letter; Exh. I, Blair Letter). In the absence of evidence, one must conclude that DHS failed to acknowledge or weigh these institutional and individual dependencies before acting with life-altering consequences.

## COUNT III

### DHS VIOLATED STUDENT DOE'S RIGHT TO DUE PROCESS AND EXPOSED HIM TO THE RISK OF ARBITRARY ARREST, DETENTION, AND DEPORTATION WITHOUT LEGAL JUSTIFICATION

33. DHS's unlawful termination of Student Doe's F-1 student status not only stripped him of his legal right to remain in the United States but also immediately subjected him to the risk of arrest, detention, and removal without any valid statutory basis. This exposure constitutes an independent and serious violation of the Due Process Clause of the Fifth Amendment.

34. In *Zadvydas* at 693, the Supreme Court reaffirmed that due process protections apply to all persons within the United States, regardless of immigration status, and that the government may not detain noncitizens arbitrarily. Here, Student Doe has never been found removable, and the termination of his SEVIS record does not—and cannot—supply lawful grounds for ICE to initiate arrest, detention, or removal proceedings.

35. Student Doe is not subject to any final order of removal, is not inadmissible or deportable under any provision of the INA and poses no danger to public safety. His only contact with law enforcement stems from a single 2016 misdemeanor arrest that was dismissed by the court on the motion of the prosecutor and previously disclosed to DHS and DOS in 2017 and 2020, respectively. At no point has DHS alleged that Student Doe engaged in conduct that would render him removable or inadmissible. To the contrary, Student Doe has maintained continuous lawful F-1 status, complied with all SEVIS requirements, and actively contributed to academic and scientific advancement in a field of national strategic importance.

36. Despite this, Student Doe is now at imminent risk of being arrested and detained by DHS/ICE based solely on the SEVIS termination, which lacks any lawful foundation. DHS/ICE's action transformed a compliant, highly skilled international student into a target for enforcement and incarceration—without any individualized finding, notice, or opportunity to respond.

37. Federal courts have recently recognized that abrupt, procedurally defective SEVIS terminations expose international students to unlawful detention and violate fundamental constitutional protections. In *Liu v. Noem*, No. 1:25-cv-00133 (D.N.H. Apr. 10, 2025), the court granted a temporary restraining order enjoining DHS from enforcing the SEVIS termination of a Dartmouth College Ph.D. student, finding that the plaintiff was likely to succeed on his claims under the Due Process Clause and the Administrative Procedure Act. The court underscored that

visa revocation, standing alone, does not authorize SEVIS termination under 8 C.F.R. § 214.1(d), and that the resulting loss of lawful status and academic progress constituted irreparable harm.

38. Here, Student Doe's arrest and detention risk arises solely from DHS's unlawful action. There is no legal justification for his removal, and ICE may not use a procedurally and substantively invalid SEVIS termination as a proxy for lawful enforcement. Allowing it to do so would permit the government to circumvent core constitutional protections by manufacturing deportability through error or indifference.

39. Accordingly, the Court should find that DHS's conduct violates Student Doe's Fifth Amendment rights and enjoin any enforcement action based on the invalid SEVIS termination.

## VI. PRAYER FOR RELIEF

WHEREFORE, Student Doe respectfully requests that this Court:

1. Declare that Defendants' termination of Student Doe's F-1 student status was unlawful, *ultra vires*, and in violation of the Administrative Procedure Act and the Due Process Clause of the Fifth Amendment;

2. Enjoin Defendants, their officers, agents, employees, and all persons acting in concert with them from detaining, arresting, or initiating removal proceedings against Student Doe based on the April 10, 2025, termination of his SEVIS record;

3. Order Defendants to reinstate Student Doe's F-1 student status in the SEVIS system and restore all rights, privileges, and benefits associated with that status, retroactive to the date of termination;

4. Compel Defendants to provide Student Doe with a meaningful opportunity to respond to any allegations that may impact his immigration status, in accordance with the Due Process Clause and applicable regulations;

5. Award Student Doe attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412;

6. Retain jurisdiction over this matter to ensure full compliance with any order issued by this Court; and

7. Grant such other and further relief as this Court deems just and proper.

Dated: May 4, 2025                                       Respectfully submitted by and through his Counsel,

/s/ Sarah Decker                                         /s/ Sarnata Reynolds
Sarah Decker (DDC Bar No. NY0566)                        Sarnata Reynolds (CA #203444)
Staff Attorney                                           Founding Attorney
ROBERT F. KENNEDY HUMAN RIGHTS                           CEARTAS SOLUTIONS
1300 19th Street NW, Suite 750                           6930 Carroll Ave. Ste. 500
Washington, DC 20036                                     Takoma Park, MD 20912
(202) 559-4432                                           415-260-7394
decker@rfkhumanrights.org


Counsel for Plaintiff                                    * application for admission *pro hac vice* filed concurrently

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of May2025, I caused a true and correct copy of the foregoing Emergency Motion for Temporary Restraining Order and all accompanying materials to be served via electronic mail and/or the Court's CM/ECF system upon all counsel of record.

Dated: May 4, 2025         Respectfully submitted,

/s/ Sarah Decker
Sarah Decker (DDC Bar No. NY0566)
Staff Attorney
ROBERT F. KENNEDY HUMAN RIGHTS
1300 19th Street NW, Suite 750
Washington, DC 20036
(202) 559-4432
decker@rfkhumanights.org

/s/ Sarnata Reynolds
Sarnata Reynolds (CA Bar: 203444)*
Founding Attorney
CEARTAS SOLUTIONS
6930 Carroll Ave. Ste. 500
301-531-5870
Sarnata@ceartassolutions.com

Counsel for Plaintiff

* application for admission *pro hac vice* filed concurrently