UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STUDENT DOE, <br><br>    Plaintiff, <br><br>  v. <br><br>KRISTI NOEM, <br>Secretary of the Department of Homeland Security, *et al.*, <br><br>    Defendants. | Civil Action No. 25-1352 (APM) |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Table of Contents ................................................................................................................ i

Table of Authorities ........................................................................................................... ii

Background ......................................................................................................................... 2

    I.     Legal Background ................................................................................................ 2

        A.     Nonimmigrant Students ................................................................................ 2

        B.     Privacy Act ..................................................................................................... 2

        C.     The Student and Exchange Visitor Information System ("SEVIS") .......... 4

    II.    Factual and Procedural Background ................................................................... 5

Legal Standards .................................................................................................................. 7

    I.     Dismissal for Lack of Subject Matter Jurisdiction under Rule 12(b)(1) ............... 7

    II.    Article III of the Constitution and Standing ....................................................... 8

    III.   Preliminary Injunctions ........................................................................................ 8

Argument ............................................................................................................................ 9

    I.     Doe Lacks Standing, as his SEVIS Record Was Reactivated Before This Suit
        Began. .................................................................................................................... 9

    II.    Doe Is Unlikely to Succeed on the Merits. ........................................................ 10

        A.     The Privacy Act Forbids the Requested Relief. ....................................... 11

        B.     ICE Did Not Violate Due Process. ........................................................... 12

    III.   Doe Cannot Establish a Likelihood of Immediate Irreparable Harm. .................. 14

    IV.   The Balance of Harms and the Public Interest Weigh Against Relief. ................. 15

    V.    The Court Should Require Security. ..................................................................... 16

Conclusion ........................................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**                                                                    Page(s)

*Almaqrami v. Pompeo,*
   933 F.3d 774 (D.C. Cir. 2019) ................................................................. 10

*Am. Farm Bureau v. EPA,*
   121 F. Supp. 2d 84 (D.D.C. 2000) ............................................................ 7

*Am. Nat'l Ins. Co. v. FDIC,*
   642 F.3d 1137 (D.C. Cir. 2011) ............................................................... 5

*Aminjavaheri v. Biden,*
   Civ. A. No. 21-2246 (RCL), 2021 WL 4399690 (D.D.C. Sept. 27, 2021) .............................. 1

*Bakhtiari v. Beyer,*
   Civ. A. No. 06-1489, 2008 WL 3200820 (E.D. Mo. Aug. 6, 2008) ........................... 12

*Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands,*
   461 U.S. 273 (1983) ............................................................................. 11

*Chaplaincy of Full Gospel Churches v. England,*
   454 F.3d 290 (D.C. Cir. 2006) ................................................................. 14

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ........................................................................... 9, 10

*CityFed Fin. Corp. v. Off. of Thrift Supervision,*
   58 F.3d 738 (D.C. Cir. 1995) ................................................................. 14

*Cmty. Fin. Servs. Ass'n of Am. v. FDIC,*
   132 F. Supp. 3d 98 (D.D.C. 2015) ........................................................... 12

*Coal. for Underground Expansion v. Mineta,*
   333 F.3d 193 (D.C. Cir. 2003) ................................................................. 7

*Cohen v. United States,*
   650 F.3d 717 (D.C. Cir. 2011) ............................................................... 11

*Cudzich v. INS,*
   886 F. Supp. 101 (D.D.C. 1995) ............................................................ 12

*Davis v. Billington,*
   76 F. Supp. 3d 59 (D.D.C. 2014) ............................................................ 8

*Davis v. FEC,*
   554 U.S. 724 (2008) ........................................................................... 8

*Dearth v. Holder,*
   641 F.3d 499 (D.C. Cir. 2011) ............................................................... 9

*Dorfmann v. Boozer,*
   414 F.2d 1168 (D.C. Cir. 1969) ........................................................... 2, 8

*Durrani v. U.S. Citizenship & Immigr. Servs.,*
   596 F. Supp. 2d 24 (D.D.C. 2009) .......................................................... 12

*El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Review,*
   959 F.2d 742 (9th Cir. 1992) ................................................................ 15

*Farris v. Rice,*
   453 F. Supp. 2d 76 (D.D.C. 2006) .......................................................... 14

*Fiallo v. Bell,*
   430 U.S. 787 (1977) ........................................................................... 15

*Foretich v. United States*,
   351 F.3d 1198 (D.C. Cir. 2003) ........................................................................... 8

*Gordon v. Holder*,
   721 F.3d 638 (D.C. Cir. 2013) ............................................................................. 14

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
   920 F.3d 1 (D.C. Cir. 2019) ............................................................................. 9, 10

*Harisiades v. Shaughnessy*,
   342 U.S. 580 (1952) ............................................................................................. 15

*Henke v. Dep't of Interior*,
   842 F. Supp. 2d 54 (D.D.C. 2012) ...................................................................... 14

*Hudson v. Palmer*,
   468 U.S. 517 (1984) ............................................................................................. 13

*Indus. Safety Equip. Ass'n, Inc. v. EPA*,
   837 F.2d 1115 (D.C. Cir. 1988) .......................................................................... 12

*Jerome Stevens Pharms., Inc. v. FDA*,
   402 F.3d 1249 (D.C. Cir. 2005) ............................................................................ 7

*Koutny v. Martin*,
   530 F. Supp. 2d 84 (D.D.C. 2007) ........................................................................ 7

*League of Women Voters v. Newby*, Civ. A.,
   No. 16-0236 (RJL), 2016 WL 8808743 (D.D.C. Feb. 23, 2016) ......................... 14

*Louhghalam v. Trump*,
   230 F. Supp. 3d 26 (D. Mass. 2017) .................................................................... 13

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ......................................................................................... 8, 10

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012) ............................................................................................. 11

*Mathews v. Eldridge*,
   424 U.S. 319 (1976) ............................................................................................. 13

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) ............................................................................................... 9

*Mdewakanton Sioux Indians of Minn. v. Zinke*,
   255 F. Supp. 3d 48 (D.D.C. 2017) ...................................................................... 14

*Nken v. Holder*,
   556 U.S. 418 (2009) ............................................................................................. 15

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ............................................................................................... 9

*Raven v. Panama Canal Co.*,
   583 F.2d 169 (5th Cir. 1978) ............................................................................... 12

*Saavedra Bruno v. Albright*,
   197 F.3d 1153 (D.C. Cir. 1999) .......................................................................... 10

*Sampson v. Murray*,
   415 U.S. 61 (1974) ............................................................................................... 14

*Schnapper v. Foley*,
   667 F.2d 102 (D.C. Cir. 1981) ............................................................................ 11

*Settles v. Parole Comm'n*,
   429 F.3d 1098 (D.C. Cir. 2005) ............................................................................ 7

*Sierra Club v. Jackson*,
    648 F.3d 848 (D.C. Cir. 2011) ........................................................................ 8
*Trudeau v. FTC*,
    456 F.3d 178 (D.C. Cir. 2006) ........................................................................ 8
*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ........................................................................................ 15
*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .................................................................................. 8, 14, 15
*Wright v. Foreign Serv. Grievance Bd.*,
    503 F. Supp. 2d 163 (D.D.C. 2007) .............................................................. 7
*Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, Civ. A.,
    No. 18-0189, 2018 WL 5018487 (W.D. Va. Oct. 16, 2018) ..................... 12, 13

## Federal Statutes

5 U.S.C. § 552a ..................................................................................................... 2, 3
5 U.S.C. § 552a(a)(2) ........................................................................................... 3, 12
5 U.S.C. § 552a(d) ..................................................................................................... 3
5 U.S.C. § 552a(g)(1)(C) ......................................................................................... 11
5 U.S.C. § 702 ........................................................................................................... 12
5 U.S.C. § 704(a)(1) ................................................................................................. 12
5 U.S.C. § 706(2) ...................................................................................................... 1, 6
8 U.S.C. § 1229a ..................................................................................................... 9, 13
8 U.S.C. § 1372(a)(1) ................................................................................................ 4
Pub. L. No. 114-126 .................................................................................................. 3
Pub. L. No. 93-579 .................................................................................................... 2

## Federal Rules

Federal Rule of Civil Procedure 12(b)(1) ............................................................. 1
Federal Rule of Civil Procedure 65(c) .................................................................. 16

## Federal Regulations

8 C.F.R. § 214.1(d) ................................................................................................... 9
8 C.F.R. § 214.2(f)(1)(i) ............................................................................................ 2
8 C.F.R. § 214.2(f)(16) ............................................................................................. 13

## Other Authorities

82 Fed. Reg. 7860–61 (Jan. 23, 2017) ................................................................... 4
84 Fed. Reg. 3493–94 (Feb. 12, 2019) ................................................................... 4
86 Fed. Reg. 69663 (Dec. 8, 2021) ......................................................................... 4

Plaintiff Student Doe, a national of Saudi Arabia, brings constitutional and Administrative Procedure Act, 5 U.S.C. § 706(2), claims, challenging Immigration and Customs Enforcement's ("ICE's") termination of a record maintained in the Student and Exchange Visitor Information System ("SEVIS"). Doe, however, conflates termination of this record with a termination of his status as a nonimmigrant student ("F-1 status") and asks this Court to overlook its jurisdictional limits, grant Doe extraordinary relief, and modify a foreign national's Privacy Act record.

The Court should decline Doe's demand and instead should dismiss this action. Plaintiff lacks standing to bring this claim, as at the time he brought suit his SEVIS record already had been reactivated. In short, this Court lacks subject matter jurisdiction over the claims.

Moreover, Plaintiff is not entitled to the injunctive relief demanded. First, Doe fails to demonstrate a likelihood of success on the merits: (a) the Privacy Act forbids the requested relief, and (b) the government did not violate due process. Second, Doe fails to establish irreparable harm because (i) Doe's SEVIS record has been reactivated prior to the filing of this lawsuit; (ii) the alleged harms are largely based on his incorrect assertion that the change in his SEVIS record changed his status; (iii) the alleged harms are monetary and, thus reparable at law; and (iv) any alleged harms are speculative. Indeed, seven weeks ago ICE issued a new policy that impacts Doe's ability to show irreparable harm. That new policy is attached to this opposition brief as Exhibit A and would apply to any future SEVIS terminations. Third, the balance of harms and the public interest weigh in favor of the Executive's ability to control immigration.

Accordingly, for the reasons discussed herein, the Court should deny Doe's demand for extraordinary relief, especially because Doe's demand is that he be granted the requested ultimate relief. *See Aminjavaheri v. Biden*, Civ. A. No. 21-2246 (RCL), 2021 WL 4399690, at *5 (D.D.C. Sept. 27, 2021) ("Moreover, the D.C. Circuit has cautioned that a preliminary injunction 'should

not work to give a party essentially the full relief he seeks on the merits.'" (quoting *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969) (citations omitted)).

**BACKGROUND**

I.     **Legal Background**

A.     **Nonimmigrant Students**

The Immigration and Nationality Act ("INA"), as amended, allows for the entry of nonresident noncitizen who "is a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study. . . at an established college, university, seminary, conservatory, academic high school, elementary school, or other academic institution or in an accredited language training program in the United States." 8 U.S.C. § 1101(a)(15)(F)(i). To be admitted in F-1 status, an applicant must present a Form I-20, Certificate of Eligibility for Nonimmigrant Student Status, issued by a certified school in the student's name; present documentary evidence of financial support; demonstrate he or she intends to attend the school specified on the student's visa; and, if the student attends a public secondary school, demonstrate that he or she has reimbursed the local educational agency administering the school for the full, unsubsidized per capita cost of providing education at the school for the period of the student's attendance. 8 C.F.R. § 214.2(f)(1)(i). To maintain F-1 status, a noncitizen must "pursue a full course of study" or "engage in authorized practical training[.]" *Id.* § 214.2(f)(5)(i).

B.     **Privacy Act**

The Privacy Act of 1974, Pub. L. No. 93-579, 88 Stat 1896 (Dec. 31, 1974), codified at 5 U.S.C. § 552a, establishes practices for federal agencies regarding the collection, maintenance, use, and dissemination of information about individuals within systems of records. *See* Pub. L. 93-579, § 2, Dec. 31, 1974, 88 Stat. 1896 (codified at 5 U.S.C. § 552a (notes)). The Act gives

agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by the Government's purported compliance failures. 5 U.S.C. § 552a. A system of records is defined as a group of records under the control of an agency from which information is retrieved by the name of the individual or by some identifier assigned to the individual. *Id.* § 552a(a)(5). The Act sets forth agency record-keeping requirements, places restrictions on disclosure of information, and provides a means for individuals to access their records and seek correction of inaccurate information in those records. *Id*. §§ 552a(b)–(d).

Relevant here, 5 U.S.C. § 552a(d) addresses how an individual may access agency records, seek amendment to those records, exhaust administrative remedies prior to seeking judicial redress, and file a statement of disagreement to be included with the records. *Id*. § 552a(d)(1)–(4). After following the required steps to exhaust administrative remedies, a final determination by the agency head triggers the civil remedy provisions of § 552a(g)(1)(A). *Id*. § 552a(d)(3). The district courts have jurisdiction over any action brought pursuant to the civil remedy provisions of subsection (g) including an action to correct a record. *Id*. § 552a(g)(1). In an action to correct a record, the court can order the agency to make the correction and can assess costs and fees against the United States if the complainant substantially prevails. *Id*. § 552a(g)(2). Actions may also be brought to compel access to a record or for damages in certain instances. *Id*. §§ 552a(g)(1)(B), (g)(1)(C), (g)(1)(D).

The Privacy Act limits remedies to any individual who is "a citizen of the United States or an alien lawfully admitted for permanent residence." 5 U.S.C. § 552a(a)(2). In a subsequent 2016 amendment under the Judicial Redress Act, Congress extended certain Privacy Act remedies to citizens of designated countries and granted venue for such challenges to the U.S. District Court for the District of Columbia. 5 U.S.C. § 552a (statutory note), Pub. L. No. 114-126 (Feb. 24, 2016),

130 Stat. 282. The countries that have been designated pursuant to that amendment are the United Kingdom and a majority of the countries of the European Union. 82 Fed. Reg. 7860–61 (Jan. 23, 2017); 84 Fed. Reg. 3493–94 (Feb. 12, 2019). Saudi Arabia, where Doe is from, has not been designated.

### C.    The Student and Exchange Visitor Information System ("SEVIS")

Congress required that "[t]he [Secretary of Homeland Security], in consultation with the Secretary of State and the Secretary of Education, . . . develop and conduct a program to collect from approved institutions of higher education, other approved educational institutions, and designated exchange visitor programs in the United States [certain information] with respect to aliens who have the status, or are applying for the status, of nonimmigrants under subparagraph (F), (J), or (M) of section 1101(a)(15) of this title." 8 U.S.C. § 1372(a)(1).

In exercise of this authority, the Secretary of Homeland Security created and maintains SEVIS, "a web-based system that the U.S. Department of Homeland Security (DHS) uses to maintain information on Student and Exchange Visitor Program ["SEVP"]-certified schools, F-1 and M-1 students who come to the United States to attend those schools, U.S. Department of State-designated Exchange Visitor Program sponsors and J-1 visa Exchange Visitor Program participants." ICE, SEVIS Overview, https://perma.cc/TA27-KNXA (pinned June 9, 2025).

Thus, ICE maintains SEVIS records in DHS/ICE–001 Student and Exchange Visitor Information System (SEVIS) System of Records. 86 Fed. Reg. 69663 (Dec. 8, 2021) ("DHS/ICE uses, collects, and maintains information on nonimmigrant students and exchange visitors, and their dependents, admitted to the United States under an F, M, or J class of admission, and the schools and exchange visitor program sponsors that host these individuals in the United States.").

Importantly, a SEVIS record termination does not indicate a termination of nonimmigrant status. DHS, SEVIS, Terminate a Student, https://perma.cc/ECM2-L3RY (pinned June 9, 2025)

("[T]ermination is not always negative. [School officials] can terminate records for several normal, administrative reasons."). Under the INA in this context there are three separate and distinct concepts: (1) SEVIS, which is a recordkeeping system used by the Department to maintain information on certain noncitizens who come to the United States to study, *see* ICE, SEVIS Overview, *supra*; (2) a visa, which is document issued by the State Department reflecting permission to apply for admission to the United States at a port of entry, *see* State Dep't, Visitor Visa, https://perma.cc/HN23-H3DK (pinned Apr. 28, 2025); and (3) immigration status, a noncitizen's formal immigration classification in the United States, *see* DHS, Maintaining Status, https://perma.cc/AM9P-LETR (pinned Apr. 28, 2025). Terminating a SEVIS record only terminates the first of these; it does not, in and of itself, terminate a noncitizen's immigration status or revoke a noncitizen's visa.

## II.    **Factual and Procedural Background**

Doe is a national of Saudi Arabia. Compl. (ECF No. 1) ¶ 8.[1] After a consular officer issued Doe a nonimmigrant visa in the F-1 category, in 2011 a U.S. Customs and Border Protection officer admitted him in F-1 status to study at Arizona State University, *id.* ¶ 3, and in the intervening years he has progressed to Ph.D. studies at Georgetown University, where he is a full-time student. *Id.* ¶¶ 3, 12.

Doe's information was run against criminal databases and was a verified match to a criminal history record for three misdemeanor charges in Arizona in 2016. *See* ECF No. 1 ¶ 4; *see also* Compl. Ex. A (SEVIS record was terminated reason was "OTHER – Individual identified in criminal records check and/or has had their VISA revoked."), Watson Decl. ¶ 4 (attached hereto

---

[1]    Where Doe's Complaint and its attachments are cited in this brief, the referenced material facts are presumed true at this stage, but only for purposes of evaluating the sufficiency of the Complaint under Rule 12(b)(1). *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

as Ex. B). Plaintiff alleges that the charges later were dismissed on the State of Arizona's motion. Compl. ¶ 17. "Beginning in March 2025, ICE reviewed and terminated numerous SEVIS records due to information provided by U.S. Department of State and criminal databases." Watson Decl. ¶ 4. On April 10, 2025, Doe's SEVIS record was terminated based on Doe's criminal history, as Georgetown University informed him. *Id.* ¶ 4.

On May 4, 2025, Doe filed his complaint in this action. *Id.* He brings constitutional and Administrative Procedure Act, 5 U.S.C. § 706(2), claims, alleging that the termination of his SEVIS record was effected without due process, and was unlawful, arbitrary and capricious, and in violation of law. Compl. (ECF No. 1) ¶¶ 46–50. Doe sought to proceed pseudonymously, but his initial motion was denied. Minute Order (May 5, 2025). Doe's amended motion to proceed pseudonymously ultimately was granted. Minute Order (May 28, 2005). On May 29, 2025, Doe filed a status report in which he admitted "the technical 'reactivation' of his SEVIS record." ECF No. 12 at 5. Indeed, Plaintiff's SEVIS record was reactivated on April 24, 2025, ten days before suit was brought. Ex. C hereto. The Court converted Plaintiff's motion for a temporary restraining order into a preliminary injunction motion. Minute Order (May 29, 2025). Plaintiff supplemented the preliminary injunction record with a letter to Doe from the Student and Exchange Visitor Program at Homeland Security Investigations, ICE, Department of Homeland Security. ECF No. 17. The letter indicated from April 11, 2025, to May 5, 2025, SEVIS records that had been terminated were reset to active, and that the activation is "automatically retroactive to the date of termination on April 10, 2025." *Id.* "[T]he effect of this retroactive activation is as though the termination did not happen, and there are no 'gaps' or 'lapses' in your SEVIS record." *Id.*

## LEGAL STANDARDS

### I.    Dismissal for Lack of Subject Matter Jurisdiction under Rule 12(b)(1)

A court must dismiss a case pursuant to Rule 12(b)(1) when it lacks subject matter jurisdiction. In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (internal citation omitted). In deciding whether to grant a motion to dismiss for lack of jurisdiction, the Court "may consider materials outside the pleadings." *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

In reviewing a motion to dismiss pursuant to Rule 12(b)(1), courts accept as true all factual allegations in a complaint and construe it liberally, granting plaintiff the benefit of all inferences that can be drawn from the facts alleged. *Settles v. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005) ("At the motion to dismiss stage, counseled complaints as well as pro se complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact."); *Koutny v. Martin*, 530 F. Supp. 2d 84, 87 (D.D.C. 2007) ("[A] court accepts as true all of the factual allegations contained in the complaint and may also consider undisputed facts evidenced in the record." (internal citations and quotation marks omitted).

Despite the favorable inferences that a plaintiff receives on a motion to dismiss, it remains a plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. EPA*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations

and quotation marks omitted). A court need not accept as true "a legal conclusion couched as a factual allegation" or an inference "unsupported by the facts set out in the complaint." *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal citation and quotation marks omitted).

## II.   Article III of the Constitution and Standing

The subject matter jurisdiction of federal courts is limited by Article III of the Constitution to the adjudication of actual, ongoing cases or controversies. This limitation "gives rise to the doctrines of standing and mootness." *Foretich v. United States*, 351 F.3d 1198, 1210 (D.C. Cir. 2003); *see also Sierra Club v. Jackson*, 648 F.3d 848, 852 (D.C. Cir. 2011).  As the party invoking federal jurisdiction, Plaintiffs bear the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  To satisfy Article III's standing requirements, Plaintiffs must show (1) each suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of Defendants; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  *Id.* at 560-61 (internal quotation marks and citations omitted). And because "standing is not dispensed in gross, . . . [each] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."  *Davis v. FEC*, 554 U.S. 724, 734 (2008) (internal quotation marks and citations omitted).

## III.   Preliminary Injunctions

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Such a request involves the exercise of a very far-reaching power that "should be sparingly exercised." *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969) (citation omitted); *Davis v. Billington*, 76 F. Supp. 3d 59, 63 (D.D.C. 2014). A moving party must demonstrate all of the following factors by "a clear showing": (1) likelihood of success on the merits; (2) irreparable harm in the absence of preliminary injunctive relief; (3)

the balance of equities between the parties tips in favor of the moving party; and (4) preliminary relief serves the public interest. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 10 (D.C. Cir. 2019).

## ARGUMENT

Doe equates the agency's action here—the modification of his SEVIS record—with the termination of his F-1 status. But Doe's complaint includes no allegations that ICE has taken any action to terminate his nonimmigrant status, which requires (1) "the revocation of a waiver authorized on his or her behalf under section 212(d) (3) or (4) of the Act;" (2) "the introduction of a private bill to confer permanent resident status on such alien;" or, (3) "notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." 8 C.F.R. § 214.1(d). Moreover, Doe does not show that ICE has instituted any action to revoke his F-1 status or remove him from the United States, which could only occur after the institution of removal proceedings and an opportunity to appear before an immigration judge. 8 U.S.C. § 1229a. In all events, even before this suit began, Doe's SEVIS record already had been reactivated, and he now has been furnished with confirmation that the "retroactive activation is as though the termination did not happen," and he is free to use that confirmation as necessary. Thus, Doe lacks standing to pursue the claims advanced in this suit, and this Court accordingly lacks jurisdiction.

## I.    Doe Lacks Standing, as his SEVIS Record Was Reactivated Before This Suit Began.

Past injuries are generally insufficient to establish standing to seek declaratory and injunctive relief, as Doe does here. *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011). This is hornbook law, as reflected in the Supreme Court's repeated directives that allegations of past injury "do[] nothing to establish a real and immediate threat" justifying injunctive relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983); *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding

injunctive relief, however, if unaccompanied by any continuing, present adverse effects."). This requirement that past harms do not establish standing to seek injunctive and declaratory relief "ensures that the lawsuit does not entail the issuance of an advisory opinion without the possibility of any judicial relief." *Lyons*, 461 U.S. at 129.

Here, Doe's SEVIS record was reactivated well before this suit began. *Supra* at 6. Plaintiff claims to "lack clarity" about various issues, *see* Pl.'s Status Report at 2 (ECF No. 12), but this suit is not properly a vehicle to address Doe's speculation and nervousness about his future "internship or academic opportunities," whether the State Department – which is not a party here – in the future will grant Plaintiff "a new F-1 visa," and whether he "can safely depart and reenter the United States," among other issues. *See id.* (As to such issues, the D.C. Circuit and federal law establish that this Court lacks jurisdiction over visa matters. *See, e.g.*, *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1158 n.2 (D.C. Cir. 1999) (consular officers have "complete discretion over issuance and revocation of visas" (citing 8 U.S.C. §§ 1104(a), 1201(i); 22 C.F.R. § 41.122)).)

"[C]ourts generally cannot declare unlawful or enjoin policies that are no longer in force." *Almaqrami v. Pompeo*, 933 F.3d 774, 783 (D.C. Cir. 2019). Yet that is just what Plaintiff seeks in this action. Plaintiff at the time suit was brought ten days after his SEVIS record's reactivation had no concrete, particularized, actual or imminent injury. *See Lujan*, 504 U.S. at 561. Plaintiff's "conjectural or hypothetical" fears are the very kind of concerns that are insufficient to establish standing. That Doe may worry that he might again some day have his SEVIS record terminated "does nothing to establish a real and immediate threat that he would again" experience such a termination. *Lyons*, 461 U.S. at 105. This case thus fails for lack of standing.

## II.    <u>Doe Is Unlikely to Succeed on the Merits.</u>

If the Court finds that Doe does have standing, a preliminary injunction is unwarranted, as explained below.

### A.    The Privacy Act Forbids the Requested Relief.

Even though the APA generally waives the government's immunity, APA section 702 "preserves 'other limitations on judicial review' and does not 'confer[] authority to grant relief if any other statute . . . expressly or impliedly forbids the relief which is sought.'" *Cohen v. United States*, 650 F.3d 717, 724–25 (D.C. Cir. 2011) (quoting 5 U.S.C. § 702) (citing *Schnapper v. Foley*, 667 F.2d 102, 108 (D.C. Cir. 1981) (concluding the government's immunity remains intact when "another statute expressly or implicitly forecloses injunctive [or declaratory] relief"))*; see Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) ("[Section 702] prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes."). "'[W]hen Congress has dealt in particularity with a claim and [has] intended a specified remedy'—including its exceptions—to be exclusive, that is the end of the matter; the APA does not undo the judgment." *Match-E-Be-Nash-She-Wish Band*, 567 U.S. at 216 (quoting *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 n.22 (1983)); *see Block*, 461 U.S. at 287 ("A necessary corollary of this rule [that the United States cannot be sued without the consent of Congress] is that when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied.").

The Privacy Act provides a specific remedy. 5 U.S.C. § 552a(g)(1)(C) states,

Whenever an agency . . . fails to maintain any record concerning any individual with such accuracy . . . as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual . . . the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

5 U.S.C. § 552a(g)(1)(C).

Doe's claims seek relief for which the Privacy Act provides. The Privacy Act, however, precludes review because Doe is a foreign national. 5 U.S.C. § 552a(a)(2) provides, "the term 'individual' means a citizen of the United States or an alien lawfully admitted for permanent residence." 5 U.S.C. § 552a(a)(2). Doe makes no claim, nor can he, that he is either a U.S. citizen or a lawful permanent resident. As such, the Privacy Act precludes judicial review of Doe's claims. *See* 5 U.S.C. § 552a(a)(2); 5 U.S.C. § 704(a)(1); *Durrani v. U.S. Citizenship & Immigr. Servs.*, 596 F. Supp. 2d 24, 28 (D.D.C. 2009); *Cudzich v. INS*, 886 F. Supp. 101, 105 (D.D.C. 1995); *Raven v. Panama Canal Co.*, 583 F.2d 169, 171 (5th Cir. 1978) ("[I]t would be error for this Court to allow plaintiff, a Panamanian citizen, to assert a claim under the Privacy Act.").

Because the Privacy Act "forbids the relief" Doe seeks, 5 U.S.C. § 702, he may not use the APA as an end run around the Privacy Act's limitations. Doe's request to further alter his SEVIS record is therefore unlikely to succeed.

### B.    ICE Did Not Violate Due Process.

"For a Plaintiff to establish a procedural due process claim, it must show that: (1) it has a protected interest, (2) the government deprived it of this interest, and (3) the deprivation occurred without proper procedural protections." *Cmty. Fin. Servs. Ass'n of Am. v. FDIC*, 132 F. Supp. 3d 98, 122 (D.D.C. 2015) (citing *Indus. Safety Equip. Ass'n, Inc. v. EPA*, 837 F.2d 1115, 1122 (D.C. Cir. 1988)). Plaintiffs have no property interest in a SEVIS record. *See Yunsong Zhao v. Va. Polytechnic Inst. & State Univ.*, Civ. A. No. 18-0189, 2018 WL 5018487, at *6 (W.D. Va. Oct. 16, 2018) (holding that Plaintiff did not have a property interest in his SEVIS status that would implicate due process); *Bakhtiari v. Beyer*, Civ. A. No. 06-1489, 2008 WL 3200820, at *3 (E.D. Mo. Aug. 6, 2008) (holding that SEVIS regulations and their enabling legislation do not indicate a congressional intent to confer a benefit on nonimmigrant students). This is because the SEVIS database is simply an administrative tool that does not affect the lawfulness of someone's

nonimmigrant status. *See Yunsong Zhao*, 2018 WL 5018487, at *4–5. For example, regulations permit universities to terminate a SEVIS record, but Doe does not argue that universities have the authority to revoke their immigration status. *See Deore v. Sec'y of Dep't of Homeland Sec.*, Civ. A. No. 25-11038, Dkt. 20, slip op. at 7–8, 12–13 (E.D. Mich. Apr. 17, 2025) (finding no likelihood of success on due process claim because "the Court cannot conclude based on the current record whether it is likely that any of the students have lost their F-1 status or have lost any legal rights based solely on the termination of their SEVIS record"). Moreover, "[t]here is no constitutionally protected interest in either obtaining or continuing to possess a visa." *Loughalam v. Trump*, 230 F. Supp. 3d 26, 35 (D. Mass. 2017) (collecting cases). As such, Doe's due process claims fail.

Moreover, even if there were such a protected interest, the processes afforded to Doe would satisfy the Fifth Amendment. *See Mathews v. Eldridge*, 424 U.S. 319, 339–40 (1976); *cf. Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[W]e hold that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy."). This is because the review procedures available to Doe (in the event Doe had lost his lawful nonimmigrant F-1 status) would allow him to seek reinstatement administratively from USCIS. 8 C.F.R. § 214.2(f)(16). And even if there were a reason to believe that Doe was likely to be placed into removal proceedings, the procedures available to Doe in immigration court comply with the Fifth Amendment. *See* 8 U.S.C. § 1229a; *see also id.* § 1201(i) (allowing the review of a visa revocation "in the context of a removal proceeding if such revocation provides the sole ground for removal under section 1227(a)(1)(B) of this title.").

III.    **Doe Cannot Establish a Likelihood of Immediate Irreparable Harm.**

"Regardless of how the other three factors are analyzed, it is required that the movant demonstrate an irreparable injury." *Mdewakanton Sioux Indians of Minn. v. Zinke*, 255 F. Supp. 3d 48, 51 (D.D.C. 2017). "The basis of injunctive relief in the federal courts has always been irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 88 (1974); *see also CityFed Fin. Corp. v. Off. of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). The Supreme Court's "frequently reiterated standard requires Petitioners seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."); *accord Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) (a plaintiff seeking a preliminary injunction must demonstrate irreparable harm that is "substantial and immediate"). "[I]f a party makes no showing of irreparable injury, the court may deny the motion without considering the other factors." *Henke v. Dep't of Interior*, 842 F. Supp. 54, 59 (D.D.C. 2012) (quoting *CityFed Fin.*, 58 F.3d at 747); *see also Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."). And where a party seeks to change the status quo through action rather than merely to preserve the status quo, typically the moving party must meet an even higher standard than in the ordinary case: the movant must show 'clearly' that [it] is entitled to relief or that extreme or very serious damage will result." *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006) (collecting authorities); *see League of Women Voters v. Newby*, Civ. A. No. 16-0236 (RJL), 2016 WL 8808743, at *1 (D.D.C. Feb. 23, 2016) ("This

conclusion is bolstered by the fact that plaintiffs here seek not to maintain the status quo, but instead to restore the status quo ante, requiring this Court to proceed with the utmost caution.").

Doe has failed to demonstrate irreparable harm sufficient to warrant extraordinary injunctive relief. As an initial matter, Doe's SEVIS record was restored long ago, and for that basic reason, he has no further irreparable harm that a preliminary injunction is needed to prevent. Moreover, ICE has now issued a new policy that impacts Doe's ability to show irreparable harm. That new policy is attached to this brief (as Ex. A) and would apply to any future SEVIS terminations. In short, Doe cannot show that the extraordinary remedy of an injunction is needed to stave off any irreparable harm.

Moreover, any claims related to the possibility of removal proceedings do not constitute irreparable injury. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) ("[T]he burden of removal alone cannot constitute the requisite irreparable injury.").

As such, the Court should find that Plaintiff has not established irreparable harm.

## IV.    <u>The Balance of Harms and the Public Interest Weigh Against Relief.</u>

The party seeking a preliminary injunction must show that the balance of equities tips in their favor and that the injunction is in the public interest. *Winter*, 555 U.S. at 20. A court "'should pay particular regard for the public consequences'" of injunctive relief. *Id.* at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). Here, the public interest weighs in favor of denying the motion. "Control over immigration is a sovereign prerogative." *El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Review*, 959 F.2d 742, 750 (9th Cir. 1992); *see Fiallo v. Bell*, 430 U.S. 787, 792 (1977) ("Our cases have long recognized the power to . . . exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."); *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952) ("[A]ny policy towards aliens is vitally and intricately interwoven with contemporaneous policies in regard

to the conduct of foreign relations," and such "matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.").

Thus, the balance of the equities weighs in favor of the Government.

**V.      The Court Should Require Security.**

Federal Rule of Civil Procedure 65(c) states, "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). To the extent that the Court grants relief to Plaintiff, Defendants respectfully request that the Court require Plaintiff to post security in an appropriate amount.

**CONCLUSION**

For these reasons, the Court should dismiss this case for lack of subject matter jurisdiction. Alternatively, the Court should deny Doe's motion for a preliminary injunction.

Dated: June 13, 2025

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

BRIAN P. HUDAK, D.C. Bar #90034769
Chief, Civil Division

By:            */s/ Peter C. Pfaffenroth*
PETER C. PFAFFENROTH
D.C. Bar No. 496632
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2513

*Attorneys for the United States of America*