UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STUDENT DOE,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 01-cv-01352 |
| ) | |
| **KRISTI NOEM,** Secretary of the ) | |
| Department of Homeland Security; and ) | |
| ) | |
| **TODD LYONS,** Acting Director of ) | |
| Immigration and Customs Enforcement, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION
AND IN OPPOSITION DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ………………………………………………………………………………..1

LEGAL STANDARD ..................................................................................................................... 2

ARGUMENT .................................................................................................................................. 4

I. The Court Should Reject Defendants' Misapplication of Standards ........................................... 4

II. Defendants Unlawfully Terminated Doe's SEVIS Record Without Due Process .................... 4

III. Doe's SEVIS Record Was Only Partially Reactivated and Remains Legally Uncertain ….... 6

IV. Doe Has Shown Irreparable Harm ........................................................................................... 7

V. Doe Is Likely to Succeed on the Merits .................................................................................... 8

VI. The Balance of Harms and Public Interest Favor Injunctive Relief ....................................... 9

VII. The Court Should Deny Defendants' Request for Security .................................................. 10

CONCLUSION ..............................................................................................................................11

## TABLE OF AUTHORITIES

**Cases**

*Al Otro Lado v. Nielsen*, 327 F. Supp. 3d 1284, 1319 (S.D. Cal. 2018) ....................................... 11

*Barahona-Gomez v. Reno*, 167 F.3d 1228, 1235 (9th Cir. 1999) ................................................. 14

*Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) .................................................................... 11, 12

*Bushireddy v. Lyons*, Tr. of Hearing, No. 25-cv-1102-SLS (D.D.C. May 5, 2025)
(Ex. B to ECF No. 19)...................................................................................................... 6

*California v. Azar*, 911 F.3d 558, 582 (9th Cir. 2018) ................................................................. 13

*Castillo v. Barr,* 449 F. Supp. 3d 915, 923 (C.D. Cal. 2020) ........................................................ 13

*Doe v. Trump*, No. 25-cv-3140-JSW, Dkt. 50 (N.D. Cal. May 22, 2025)
(Ex. A to ECF No. 17) ………………………………………………………………..... 5, 6, 12

*East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680–81 (9th Cir. 2021) .......................... 13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs*. (TOC), Inc., 528 U.S. 167, 189 (2000) ..... 2, 7

*GoTo.com, Inc. v. Walt Disney Co*., 202 F.3d 1199, 1210 (9th Cir. 2000) .............................. 2, 13

*Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 198 (D.C. Cir. 1992) ............................................. 3

*Jie Fang v. Dir., U.S. Citizenship & Immigr. Servs*., 935 F.3d 172, 182–85 (3d Cir. 2019)..5, 6, 11

*Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) ........................................................ 14

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201–02
(9th Cir. 1980) .................................................................................................................. 2

*Liu v. Noem*, No. 25-cv-4102, 2025 WL 1233892, at *2–3 (D.N.H. Apr. 29, 2025)
(Ex. F to ECF No. 17) ................................................................................................. 5, 11

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) .............................................................. 2

*Mathews v. Eldridge*, 424 U.S. 319, 333–35 (1976) ............................................................... 5, 11

*Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983) .............................................. 11

*Moms Against Poverty v. Dep't of State*, 2022 WL 17951329, at *3

(D.D.C. Dec. 23, 2022) ................................................................................................................. 3

*Nat'l TPS All. v. Noem*, 2025 WL 957677, at *19–20 (N.D. Cal. Mar. 31, 2025) ...................... 13

*Niz-Chavez v. Garland*, 593 U.S. 155, 160–61 (2021) ................................................................ 13

*Nken v. Holder*, 556 U.S. 418, 435 (2009) .................................................................................... 2

*Ortega Gonzalez v. Noem*, No. 25-cv-4012, 2025 WL 1355272, at *6

(D. Or. May 9, 2025) (Ex. C to ECF No. 17) ………………………………………………. 7, 12

*Student Doe #1 v. Noem*, No. 25-cv-4188, 2025 WL 1341711, at *5–6

(N.D. Ill. May 8, 2025) (Ex. D to ECF No. 17) …………………………………………..... 5, 6, 8

*Student Doe #1 v. Noem*, No. 25-cv-4105, 2025 WL 1348503, at *12–13

(D.N.J. May 8, 2025) (Ex. E to ECF No. 17) …………………………………………………... 6, 8

*Vyas v. Noem*, No. 25-cv-4027, 2025 WL 1351357, at *4–5

 (S.D.W. Va. May 8, 2025) (Ex. G to ECF No. 17) ...................................................................... 13

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20–24 (2008) .......................................... 2, 3

*Zadvydas v. Davis*, 533 U.S. 678, 690–91 (2001) ........................................................................ 5

**Statutes & Regulations**

5 U.S.C. § 704 ........................................................................................................................ 11, 12

5 U.S.C. § 706(2)(A) ..................................................................................................................... 11

8 C.F.R. § 214.1(d) ....................................................................................................................... 11

8 C.F.R. § 214.2(f)(16) ............................................................................................................... 6, 8

Fed. R. Civ. P. 65(c) ............................................................................................................... 14, 15

**Other Authorities**

9 FAM 402.5-4(B) ............................................................................................................... 5

**Other Authorities**

9 FAM 402.5-4(B) ............................................................................................................... 5

## INTRODUCTION

Student Doe respectfully submits this Reply in Support of Doe's Motion for Preliminary Injunction (ECF No. 3), and in response to Defendants' Opposition and Motion to Dismiss the Complaint (ECF No. 18, 19).

This case arises from the government's failure to follow required procedures before terminating an international student's SEVIS record—a termination later partially reversed but never fully remedied. It presents a live and ongoing dispute about the legal status of an international student whose SEVIS record was terminated without notice, explanation, or meaningful recourse—and only later "reactivated" in a manner that remains legally and procedurally ambiguous. At stake is whether the government may take status-altering action based on unverified data, and then avoid judicial scrutiny through vague assurances and post-hoc rationalizations.

Defendants' opposition mischaracterizes the nature of the relief Doe seeks and applies an incorrect legal framework—invoking heightened standards, jurisdictional objections, and sovereign authority to deflect from the actual question before the Court: whether preliminary relief is warranted to preserve the status quo before the April 10 SEVIS termination and prevent ongoing harm. At the preliminary injunction stage, plaintiffs must only show a likelihood of success—including on jurisdiction. Doe meets that standard. His injuries are real, ongoing, and redressable—and his request is narrowly tailored to restore the status quo *nunc pro tunc*.

The Court should assess Doe's motion under the proper Rule 65 standard and issue relief necessary to prevent further harm while the case proceeds.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions and temporary restraining orders. It permits a court to grant preliminary relief upon notice to the adverse party and a showing that the moving party meets the equitable factors justifying such relief. The rule also provides that the court may require the posting of security in an amount it deems proper to compensate the enjoined party should the injunction later be found wrongful. See Fed. R. Civ. P. 65.

To obtain a preliminary injunction, a plaintiff must show: (1) a likelihood of success on the merits, (2) irreparable harm absent relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest. See *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In cases challenging government action, courts may also evaluate whether the relief sought preserves the status quo ante (reversing Ninth Circuit's grant of injunction and emphasizing the need for plaintiffs to satisfy all four factors). See also *Nken v. Holder*, 556 U.S. 418, 435 (2009) (noting that a preliminary injunction is an "extraordinary remedy" and that its purpose is to preserve the status quo pending final resolution of the case).

Courts have particularly recognized that preliminary injunctions are appropriate to prevent the harmful effects of agency actions undertaken without adherence to statutory and regulatory requirements. See *Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167, 189 (2000) (holding that a defendant's voluntary cessation of challenged conduct does not moot a case unless it is absolutely clear the behavior could not reasonably recur, and recognizing courts' equitable power to enjoin ongoing statutory violations).

Preliminary injunctions are designed to preserve the status quo ante—the last uncontested state of affairs that preceded the alleged harm, which in this case, would be prior to April 10, 2025. See *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000). Factual assertions supporting preliminary relief may be substantiated through declarations and documentary evidence, and where disputes exist, courts may resolve them in favor of the moving party. See *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (D.C. Cir. 1980).

Defendants attempt to reframe this motion as seeking mandatory relief and impose a heightened burden on Doe—arguing that he must make a "clear showing" under *Winter* and overcome threshold jurisdictional barriers. This misapplies the law. Doe does not seek to compel new agency action, but rather to prevent continued harm from an unlawful termination that has not been fully reversed.

Although Defendants raise a facial Rule 12(b)(1) challenge, that standard does not displace the preliminary injunction framework. Courts in this District make clear that at the PI stage, plaintiffs need only demonstrate a likelihood of jurisdiction, not conclusively prove it. See *Moms Against Poverty v. Dep't of State*, 2022 WL 17951329, at *3 (D.D.C. Dec. 23, 2022). Where jurisdictional facts overlap with the merits, courts defer resolution until after discovery or trial. See *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 198 (D.C. Cir. 1992).

Doe has demonstrated a likelihood of success in establishing standing. His declarations show injuries that are concrete, traceable to the government's actions, and redressable through judicial relief. Defendants' appeal to sovereign authority and procedural ambiguity cannot defeat

jurisdiction at this early stage. Nor have they met their burden to demonstrate mootness. See *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

Defendants' brief also omits any reference to the nationwide preliminary injunction issued in *Doe v. Trump*—an order that enjoined similar SEVIS terminations and found a likelihood of systemic due process and APA violations. While that order temporarily halts future SEVIS terminations based on unverified database hits, it does not restore Doe to his pre-termination legal position, eliminate the termination notation, or provide binding assurance against its future use. The government's failure to even acknowledge that binding order—let alone explain how it complies with it—raises serious concerns about compliance and reinforces the need for individualized relief in this case. See *Doe v. Trump*, No. 25-cv-3140-JSW (N.D. Cal. May 22, 2025).

**ARGUMENT**

I.      **The Court Should Reject Defendants' Misapplication of Standards**

Defendants wrongly assert that Doe must show a "clear likelihood" of success on the merits. But where a plaintiff seeks to preserve the status quo, the standard is more flexible. See *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000). Moreover, Doe does not seek affirmative relief; he seeks to halt ongoing harm and preserve a lawful immigration status he had until the government acted without authority.

The D.C. Circuit has made clear that plaintiffs need only establish standing and a likelihood of success on the merits—not absolute certainty. See *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Where jurisdictional facts overlap with the merits, courts must defer

4

resolution until after discovery or trial. See *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 198 (D.C. Cir. 1992).

II. **Defendants Unlawfully Terminated Doe's SEVIS Record In Violation of the APA and Due Process**

The APA requires courts to set aside agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See 5 U.S.C. § 706(2)(A). DHS terminated Doe's SEVIS record without citing any basis under regulation or statute and without notice or an opportunity to respond. These failures violate both the APA and the Due Process Clause.

SEVIS status is foundational to maintaining F-1 nonimmigrant student status. Its termination immediately jeopardizes a student's eligibility for work authorization, lawful change of status, and future immigration benefits. See 8 C.F.R. §§ 214.2(f)(5), (f)(10), (f)(16); 8 U.S.C. §§ 1255(c)(2), 1258(a).

Doe's case easily satisfies the due process framework articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976). First, Doe's private interest in maintaining lawful F-1 student status is substantial—it affects his ability to study, remain lawfully in the United States, and pursue future immigration benefits. Second, the risk of erroneous deprivation was unacceptably high. Defendants acted without notice, explanation, or an opportunity for Doe to contest the termination. This summary action resulted in immediate and ongoing legal and personal harm. Finally, the government's interest in swiftly terminating status without process is minimal—particularly where no individualized determination or urgency was cited to justify bypassing established procedures. Minimal administrative burden cannot justify denying students basic procedural rights. Accordingly, the termination of Doe's SEVIS record violated due process.

5

Defendants also acted under a newly coordinated "policy"—never publicly disclosed—between DHS and the Department of State that authorized the mass termination of SEVIS records without individualized assessment (ECF No. 19). This kind of inter-agency coordination, undertaken without transparency, effectively created a new policy while bypassing SEVIS regulations and the APA's notice-and-comment rulemaking requirements. See *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 515 (2009) (requiring reasoned explanation for policy changes); *Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1319 (S.D. Cal. 2018) (finding unwritten border policies subject to APA requirements).

### III. Doe's Case is Not Mooted Because the His Legal Status Remains Uncertain and the Harm is Ongoing

Reactivation does not moot Doe's claims. The reactivation was incomplete. ICE did not directly inform Doe of the termination or reactivation of his SEVIS until May 30 (ECF No. 16, Exh. 1), never corrected the record *nunc pro tunc*, and never assured Doe that the gap in status will not be used to deny future applications—such as for OPT or adjustment of status. *Id*. ("It is ICE's position that the SEVIS termination *will not, by itself, be used* as a basis for denial of future immigration benefits)(emphasis added). See *Jie Fang*, 935 F.3d at 182–85; 8 C.F.R. § 214.1(d). Without relief, Doe remains exposed to harms flowing from the gap in status, including inability to pursue future immigration benefits. DHS has not acknowledged error or committed to refrain from future terminations based on the same rationale. Other courts have recognized this precise legal posture. See *Doe v. Trump*, No. 25-cv-3140-JSW, Dkt. 50 (N.D. Cal. May 22, 2025) (Ex. A to ECF No. 17); *Student Doe #1 v. Noem*, 2025 WL 1341711, at *5–6 (N.D. Ill. May 8, 2025); *Student Doe #1 v. Noem*, 2025 WL 1348503, at *12–13 (D.N.J. May 8, 2025).

Without relief, DOE faces lingering uncertainty and possible future disqualification from academic optional practical training (OPT) and employment-based immigrant and nonimmigrant

6

visas. The harm remains live and continuing. See *Friends of the Earth*, 528 U.S. at 189 (holding that a defendant's voluntary cessation of challenged conduct does not moot a case unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur"); *FBI v. Fikre*, 601 U.S. 234, 241–43 (2024) (holding that the government bears a "formidable burden" to show challenged conduct will not recur and that claims are not moot if harm is ongoing or likely to resume).

The termination of Doe's SEVIS record triggered a period of "unlawful presence", exposing him to multiple immigration penalties. Under 8 U.S.C. § 1182(a)(9)(B), the accrual of unlawful presence may result in three- and ten-year bars to reentry. Even a short period of unlawful presence can render a noncitizen ineligible for change of status under 8 U.S.C. § 1258(a), or adjustment of status under 8 U.S.C. § 1255(c)(2), and may be treated as an adverse discretionary factor in other future applications. See *In re Arai*, 13 I. & N. Dec. 494, 495–96 (BIA 1970) (negative equities may weigh against discretionary relief). Critically, unlawful presence may also be used by DHS as the basis to initiate removal proceedings under 8 U.S.C. § 1227(a)(1)(C)(i), which provides for removal of individuals who fail to maintain the conditions of their nonimmigrant status. Unless Doe's status is corrected nunc pro tunc, these legal consequences remain live and ongoing.

Moreover, Defendants' own filings reveal conflicting accounts of the policy under which Doe's SEVIS record was terminated, reactivated, and might be re-terminated. They first relied on NCIC data, then referenced DOS coordination, and now offer vague assurances of future policy changes (ECF Nos. 16, 19). Such inconsistency undercuts any assertion that the challenged conduct will not recur. As the Supreme Court recently reaffirmed, "[n]othing the government offers...satisfies that formidable standard" where it retains authority to reinstate challenged

7

conduct at will. See *FBI v. Fikre*, 601 U.S. 234, 243 (2024). Courts evaluating voluntary cessation "must be particularly wary when the government fails to commit to a specific remedial course or policy restraint." *Id*. The shifting explanations here, paired with the lack of any final agency statement admitting error or a willingness to return Doe to his status before the arbitrary SEVIS termination, only reinforce the continuing risk.

### IV.     Doe Has Shown Irreparable Harm

Doe's termination has caused lost research opportunities, an inability to travel home, mental anguish, and a continuing fear of being detained and removed arbitrarily. These are precisely the harms that courts have recognized as irreparable in the context of student visa termination. See *Liu v. Noem*, 2025 WL 1233892, at *2–3; *Ortega Gonzalez v. Noem*, 2025 WL 1355272, at *6. These harms cannot be remedied after the fact. Preliminary relief is necessary to prevent further damage.

### V.      Doe Is Likely to Succeed on the Merits

ICE terminated Doe's SEVIS record based on a new policy that was never disclosed publicly, subjected to notice and comment, or supported by statutory authority (ECF No. 16, 2). The agency acted to terminate Doe's SEVIS on April 10, 2025 without meaningful explanation or individualized review. This is classic arbitrary and capricious conduct. See *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983) (agency action is arbitrary where it entirely fails to consider an important aspect of the problem or offers an explanation counter to the evidence before it).

Defendants' actions also violated SEVIS regulations. 8 C.F.R. § 214.1(d) requires that noncitizens be provided written notice before termination of status, including the grounds for termination and an opportunity to respond. Defendants now claim that no formal termination

8

occurred—effectively conceding that none of these procedural requirements were met. Yet Doe's SEVIS record was marked "terminated" in March, and he was treated by the government and Georgetown University as out of status. The blanket termination of SEVIS records, later reversed without acknowledgment of error or notice to affected individuals, evinces a pattern of arbitrary and capricious policymaking that violates both the APA and due process principles. See *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983) (holding that an agency decision is arbitrary and capricious if it fails to examine relevant data or offer a satisfactory explanation for its action); *Mathews v. Eldridge*, 424 U.S. 319, 333–35 (1976).

## VI. The Balance of Harms and Public Interest Favor Injunctive Relief for Plaintiff, Regardless of Nationwide Injunction

Defendants assert that a nationwide injunction would impede immigration enforcement and it is assume. But compliance with law is not a cognizable harm. *Doe*, by contrast, faces concrete, personal risks: removal, denial of future status, reputational and academic injury, and the inability to complete his education—all stemming from a SEVIS termination taken without notice, explanation, or process.

While the nationwide preliminary injunction entered in *Doe v. Trump* provides general protection for similarly situated individuals, it does not displace the need for individual injunctive relief in this matter. The government has not acknowledged any error in Plaintiff's specific case, nor has it restored his SEVIS record *nunc pro tunc*. The government also continues to offer inconsistent accounts across litigation regarding the legal effect and retroactivity of reactivations (ECF Nos. 16, 19). See also *Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167, 189 (2000) (a defendant's voluntary cessation of challenged conduct does not moot a claim

absent clear showing that wrongful behavior will not recur). Such inconsistencies underscore the need for judicial clarity and individualized protection.

Further, Plaintiff's harms are not fully remedied by a policy freeze. The government has provided no assurance that the prior gap in SEVIS status will not be used against him in future immigration adjudications. And as the record shows, even brief gaps in F-1 status can jeopardize eligibility for academic opportunities and employment-based visas. The balance of equities and the public interest both weigh in favor of maintaining Plaintiff's status and halting unlawful agency action. See *California v. Azar*, 911 F.3d 558, 582 (9th Cir. 2018) (public interest is served by ensuring agency compliance with the law); *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680–81 (9th Cir. 2021) (injunctive relief appropriate to halt unlawful immigration policy shifts).

Defendants have waived any objection to the scope of injunctive relief by failing to address it in their opposition. Courts have repeatedly held that failure to contest the scope of relief sought—particularly in the context of a preliminary injunction—constitutes waiver. See *California v. Azar*, 911 F.3d 558, 581–82 (9th Cir. 2018) ("Defendants' failure to meaningfully challenge the scope of the injunction below forfeits the issue on appeal."); *Bresgal v. Brock*, 843 F.2d 1163, 1170 (9th Cir. 1987). Here, Defendants did not oppose Plaintiff's requested relief restoring his SEVIS record *nunc pro tunc*, nor did they seek to limit the scope of injunctive relief in their briefing. They cannot now retroactively limit the form or breadth of the relief sought.

**VII.   The Court Should Deny Defendants' Request for Security and Grant EAJA Fees**

Rule 65(c) permits waiver of security when the injunction serves the public interest or when plaintiffs are indigent. Doe is a full-time student and seeks relief to avoid arbitrary action

10

and wrongful deportation. The government faces no monetary risk. See *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1235 (9th Cir. 1999); *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009).

Plaintiff also respectfully requests that the Court grant leave to seek attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, following final judgment, as Defendants' position lacks substantial justification.

## CONCLUSION

For the reasons stated above, and in the opening motion and complaint, the Court should grant Plaintiff's Motion for a Preliminary Injunction and deny Defendants' Motion to Dismiss. The Court should preserve Doe's SEVIS record *nunc pro tunc* to April 9, 2025, before Defendants' terminated SEVIS status, prohibit further enforcement based on the unlawful termination, and enjoin Defendants from using the gap in SEVIS status to disqualify Plaintiff from immigration benefits or initiate removal proceedings onas a matter of law or discretion. Plaintiff further requests that the Court waive any security under Rule 65(c).

Dated: June 20 2025                                               Respectfully submitted,

/s/ SARNATA REYNOLDS

Sarnata Reynolds
CA Bar No. 203444
Ceartas Solutions
6930 Carroll Ave., Ste. 500
Takoma Park, MD 20912
415-260-7394

11

*Attorney for Plaintiff*

12